## STATE *v.* HODGE.

There is no legal presumption of guilt from the exclusive possession of property recently stolen.

INDICTMENT, for breaking and entering the dwelling-house of one James Call in the night-time, and stealing a gold watch and chain. Verdict, guilty; and motion of the defendant for a new trial. The evidence tended to prove the following facts. The house had been broken and entered in the night. The next morning, when the watch and chain were missed, the house occupied by the defendant was searched, and the watch and chain were found (with two bits, a chisel, and a spirit-level, which belonged to Call, and which he had kept in his shop in front of his house) in a straw bed owned by one Howe, the father of Mrs. Call, in a back chamber adjoining the room in which the defendant slept. There was no access to the back chamber, except through a door which led into the defendant's sleeping-room. The back chamber was not hired or occupied by the defendant; but Howe and Call kept sundry things there, and they and others had access to it occasionally. It was not under lock and key. To enter it, it would be necessary to go through the lower kitchen, occupied by the defendant, then through an entry, and up a pair of stairs, and through his sleeping-room. In his bed in his sleeping-room, under the pillows and under the sheets, was found a small piece of upper leather which Call claimed, and which the defendant admitted he had stolen. The defendant also admitted he had stolen some sole leather from Call, which he had used in tapping his boots, saying he had taken the leather to get even with Call. The defendant had worked for Call, and had had some difficulty with him about his labor.

The defendant excepted to the refusal of the court to instruct the jury that the evidence was not sufficient to authorize a verdict against him.

*Burke,* for the respondent.

In this case, the State relies on the *possession,* by the respondent, c the articles alleged to be stolen, for conviction on the charge of break ing, entering, and stealing, set forth in the indictment. Possession of

stolen goods, which will justify conviction, must be *recent* and *exclusive.*
3 Greenleaf's Ev., secs. 31, 32, 33 ; 2 Starkie's Ev. (2d Am. ed.) 840,
note ; Best on Presumption of Law and Fact, pp. 307, 308, secs. 229,
230.

In this case, the State has not actually proved either possession by
the respondent of the articles alleged to be stolen, or occupancy of the
room in which they were found, much less *exclusive* possession.

On the contrary, it is in proof that they were found in a straw bed
owned by a Mr. Howe,—father-in-law of James Call, the complainant,
and a witness in this case,—in a room neither rented nor occupied by
the respondent, but which was actually occupied by Howe and Call, and
to which they both had free access.  The wife of the respondent, a
person of sufficient age to be capable of committing the alleged crime,
had also access to the room in which the articles were found.   Other
persons had access to the house of the respondent, and of course to
the same room.   On the evidence, if the respondent were charged
with having received the articles as stolen goods, he could not be con-
victed.  If he could not be convicted of the lesser, ought he to have
been convicted of the greater crime ?

The evidence, tested by legal principles, seems not to be sufficient to
remove all reasonable doubt of guilt, and to authorize a verdict of guilty
against the respondent.

And whatever may be the moral probability of guilt (which is not
admitted in this case, but which is rebutted by the actual facts proved),
the great principles of law, which secure and protect the personal liberty
and reputation of the citizen, will undoubtedly be upheld and main-
tained by this tribunal.

*Colby,* solicitor for the State.

Doe, J.   The defendant's counsel claims that " the State relies on
the possession by the respondent of the articles alleged to be stolen ;"
that " possession of stolen goods, which will justify conviction, must be
recent and exclusive ;" that " the State has not actually proved either
possession by the respondent of the articles alleged to be stolen, or
occupancy of the room in which they were found, much less exclusive
possession ;" and that the  court erred in refusing to instruct the jury,
as requested, that the evidence was not sufficient to authorize a verdict
against him.

It has been generally understood, that the prisoner's exclusive and
unexplained possession of stolen property recently after the theft,
raises the presumption that he is the thief, and that this presumption
takes the burden of proof from the prosecutor and lays it upon the
prisoner.   2 East P. C. 656 ; Roscoe Cr. Ev. 18 ; J. F. Stephen Cr. L.
303, 304 ; 1 Ben. and Heard L. C. C. 360–372, 1st ed. ; and cases
cited in 2 Bishop Cr. Proc., § 701.   When the defendant's possession
of stolen property has been the only evidence relied upon to convict
him, judges have directed an acquittal because they held the posses-
sion was not recent, or was not exclusive, or was explained.  Trials

have proceeded upon the ground that it was for the court to determine whether the possession proved was recent enough, or exclusive enough, or explained enough, to shift the burden of proof, and that, if the burden of proof was not thus shifted by the court, the defendant was entitled to an acquittal. The court has decided, not whether there was any evidence, however slight, to be submitted to the jury, but whether there was a presumption which shifted the burden of proof. This practice was formerly so common, that it came to be regarded as the application of a rule of law, and is so laid down in many books of high authority.

In this case, the defendant claims that the evidence does not bring him within the supposed rule in relation to possession of stolen property, and that the court should have ordered his acquittal. It becomes necessary, therefore, to inquire whether there is any such rule of law as has been supposed, and what the rule is, if there is one, and whether this case comes within it. It is obvious, at the outset, that if there is such a rule, the presumption which it draws from the evidence must be a presumption of law declared by the court, as distinguished from a presumption of fact found by the jury. The first practical difficulty in the way of making it a presumption of law is the impossibility of inventing a rule by which to determine whether the possession *is* recent or not.

*Cockin's Case*, 2 Lewin C. C. 235, was an indictment for stealing two sacks, found in the defendant's possession about twenty days after they were missed. COLERIDGE, J., said to the jury : " If I was now to lose my watch, and in a few minutes it was to be found on the person of one of you, it would afford the strongest ground for presuming that you had stolen it ; but if a month hence it were to be found in your possession, the presumption of your having stolen it would be greatly weakened, because stolen property usually passes through many hands." In a valuable note to this case, the reporter says : " The question, however, of distance of time and recent possession must be at all times one of fact under the circumstances, and a jury under the judge's direction must decide."

*Rex* v. *Partridge*, 7 C. and P. 551, was an indictment for stealing two pieces of woolen unfinished cloth, found in the defendant's possession about two months after it was missed. The defendant contended that the length of time that had elapsed since the loss of the cloth was so great, that there was no presumption of guilt raised against him by the possession of it. But PATTERSON, J., said : " I think the length of time is to be considered with reference to the nature of the articles which are stolen. If they are such as pass from hand to hand readily, two months would be a long time ; but here that is not so. It is a question for the jury."

*Rex* v. *Adams*, 3 C. and P. 600, was an indictment for stealing an axe, a saw, and a mattock, found in the defendant's possession three months after they were missed. " Mr. Justice J. PARKE directed an acquittal without calling on the prisoner for his defence, observing, that a possession of stolen property three months after it was lost was not

such a recent possession as to put the prisoner upon showing how he came by it." In *Reg.* v. *Hewlett*, 2 Russell on Crimes 728, note *r*, by Greaves: "Where the only evidence against the prisoner was, that three sheets were found upon his bed in his house three calendar months after they had been stolen, and it was urged that this was too long a time after the larceny to call on the prisoner to give any account how he had become possessed of them,—and *Rex* v. *Adams* * * * was relied on,—WIGHTMAN, J., held that the case must go to the jury, as it seemed to him that it was impossible to lay down any definite rule as to the precise time which was too great to call upon the prisoner to give an account of the possession; and that in this case that was *some* evidence, although *very slight*, for the jury to consider."

In *Rex* v. *Dewhirst*, 2 Stark. Ev. 449, note *z :* "Where seventy sheep were put on Thornly Common, on the 18th of June, and were not missed till November, and the prisoner was in possession of four of those sheep in October, and of nineteen other of them on the 23d of November, BAYLEY, J., allowed evidence of both to be given." Where a horse, alleged to have been stolen, was not traced to the possession of the prisoner until six months from the date of the robbery, MAULE, J., directed an acquittal. *R.* v. *Cooper*, 3 C. and K. 318; Roscoe Cr. Ev. 20, 6th Am. ed. *Reg.* v. *Cruttenden*, 6 Jurist 267, was an indictment for larceny of a shovel. GURNEY, B., instructed the jury: "I have frequently had occasion to tell you, gentlemen, that when property, proved to be stolen, is found, shortly after the theft, in the possession of a party, that person is to be presumed to be the thief unless he explain satisfactorily how he came by it. But in this case I do not think the possession of this shovel sufficiently recent to raise that presumption against the prisoner. A period of six months has elapsed since the property was lost, in which time it might have passed through several hands; the prisoner was not at his home when it was found there; and, upon the whole, I think it will be safer to acquit him without calling on him for his defence."

*Reg.* v. *Evans*, 2 Cox C. C. 270, S. C. 1 Ben. and H. L. C. C. 363, 1st ed., was an indictment for stealing a beetle-head, found in the defendant's possession fifteen months after it was missed. "ALDERSON, B., summed up: In cases where property of such insignificant value as that laid in this indictment is shown to have been stolen so long as fifteen months before it is discovered in the possession of a stranger, that person ought not to be called on to answer for that possession on a charge of felony; for it might reasonably be inferred that he had come honestly by it in that long interval, reference being always had to the character and value of the thing itself."

*State* v. *Williams*, 9 Ired. 140, 143, 148, was an indictment for stealing a slave, who ran away from his master twenty days before he was found in the defendant's possession. The court instructed the jury that, to raise a presumption that the possessor of stolen property had stolen it, the possession must be so recent after the theft that the possessor could not have well come by it unless he had stolen it himself; and that when the property was a negro man, who had run away twenty

days before the possessor was first seen in possession, the time was too: long for the court to lay it down as a rule of law that the possessor was to be presumed to have been the taker ; and in such case it was to be passed on by the jury as an open question of fact upon the evidence." It was held that the court properly refused to instruct the jury "that a possession twenty days after the negro ran away was no evidence of a taking by the prisoner." RUFFIN, C. J., delivering the opinion, said: "The possession of a stolen thing is evidence to some extent against the possessor of a taking by him. Ordinarily, indeed, it is stronger or weaker in proportion to the period intervening between the stealing, and the finding in the possession of the accused ; and after the lapse of a considerable time, before a possession is shown in the accused, the law infers, not his guilt, but leaves that question to the jury under a consideration of all the circumstances."

*State* v. *Shaw,* 4 Jones N. C. 440, was an indictment for stealing a bar of iron, found in the defendant's possession twenty-three days after it was missed by the owner. "The counsel for the defendant insisted that according to the case of *State* v. *Williams,* the finding of stolen property after twenty days from the time it was stolen, in the possession of any one, raises no presumption of guilt, and asked the court so to charge. The solicitor admitted the principle, but argued that the finding was a fact to be considered by the jury with the other circumstances of the case." The court instructed the jury "that as the iron was found in the possession of the defendant more than twenty days after it was lost, this was no evidence in itself of guilt, but might be considered as a fact in connection with other circumstances."

*State* v. *Kinman,* 7 Rich. 497, 501, 503, 504, was an indictment for stealing a slave found in the defendant's possession in Alabama, five months after he was lost in South Carolina. The jury were instructed that this possession might, unless explained or accounted for, be enough to convict the prisoner. They were also instructed that they might consider the length of time, and if, in the case of a stolen slave, they thought it enough to negative the presumption of guilt, the prisoner ought to have the benefit of it ; but the judge told them that he "did not think it ought to have any such effect, for, in the case of a slave, there was no difficulty of identification, or of accounting for the possession." It was held that these instructions were correct, and that it "was right and proper" that the judge should advise the jury as to the weight of the evidence of lapse of time.

*Jones* v. *State,* 26 Miss. 247, 249, 250, was an indictment for stealing a saddle, found in the defendant's possession five or six months after it was stolen. HANDY, J., delivering the opinion, said : "No definite length of time, after loss of goods and before possession shown in the accused, seems to be settled as raising a presumption of guilt. When the goods are bulky, or inconvenient of transmission, or unlikely to be transferred, it seems that a greater lapse of time is allowed to raise the presumption than when they are light, and easily passed from hand to hand, and likely to be so passed ; because, in the one case the goods may not have passed through many hands, and the proof to justify

possession may therefore be more simple and easy ; but in the latter case, the goods may very probably have come to the accused through many persons, and their transit, from the smallness of their nature and value, be much more difficult to be proved.    Roscoe Cr. Ev. 18 ; 3 Gr. Ev., § 32.    Yet all the cases hold that the possession must be recent, after the loss, in order to impute guilt ; and this presumption is founded on the manifest reason that when goods have been taken from one person and are quickly thereafter found in the possession of another, there is a strong probability that they were taken by the latter.    This probability is stronger or weaker in proportion to the period intervening between the taking and the finding ; or it may be entirely removed by the lapse of such time as to render it not improbable that the goods may have been taken by another and passed to the accused, and thus wholly destroy the presumption."   It was held, on the authority of *Rex* v. *Adams*, 3 C. and P. 600, 3 Gr. Ev., § 32, and *State* v. *Williams* 9 Ired. 140, that the mere possession of the saddle five or six months after the theft, created no presumption of the defendant's criminality, and was not sufficient to put him on his defence.

In *Warren* v. *State*, 1 Iowa 106, 109, the finding, under certain circumstances, on the defendant's premises, of several traps, a boat-hook, and other things, eighteen months after they were stolen, was held not sufficient to shift the burden of proof.

In *Rex* v. ——, 2 C. and P. 459, goods were found in the defendant's house sixteen months after they were lost.

" BAYLEY, J.    The rule of law is, that if stolen property be found, *recently* after its loss, in the possession of a person, he must give an account of the manner in which he became possessed of it, otherwise, the presumption attaches that he is the thief ; but I think that, after so long a period as sixteen months had elapsed, it would not be reasonable to call upon a prisoner to account for the manner in which property, supposed to be stolen, came to his possession."   In *State* v. *Bennet*, 3 Brev. 514 (S. C. 2 Const. Rep. 692), it was held that a new trial would not be granted on the ground of misdirection, when the jury were instructed that the presumption of guilt, arising from possession of stolen property, is not rebutted by the lapse of two months between the theft and the finding.    NOTT, J., delivering the opinion, said, " although it is the province of the jury to judge of the facts, and of the judge to determine the law, yet the judge is not precluded from giving his opinion on the facts.    It is his duty to aid the jury in forming an opinion of the evidence as well as the law."   These two cases have no weight as authorities on the question of recentness, because the character of the stolen property is not reported, it being now everywhere agreed that the character of the property is a material fact, to be considered in determining that question.

" The finding of stolen property on the prisoner, recently after the taking, is evidence of the larceny having been committed by him, as it is of burglary, if the goods had been burglariously taken, and sufficient to call on him to account for his possession ; yet, in the case of a bank note, such finding, if evidence at all, is too slight to found a verdict

on, for the note passes easily and quickly from hand to hand, without examination; and people are not to be expected to mark each note, or to be able to show from whom it has been received. If, indeed, the note were of large amount, it might be otherwise." BURTON, J., in *Rex* v. *Atkinson*, 1 Crawf. and Dix. C. Rep. 161.

"The property must be traced into the possession of the accused within a reasonable time after it has been lost or missed, but what is that reasonable time is not so easy to determine. It seems quite clear, however, that it depends on the nature of the goods,—whether they are of a description much in common use, or such as might, in the ordinary course of things, come honestly and regularly into the possession of the person found with them, and also, if they are of a nature easily passed from hand to hand. Suppose the Pitt diamond or the crown jewels were stolen, and, after the lapse of one or two years, found in the possession of a person in a comparatively humble station of life, who refused to give any account of where he got them, would there be anything harsh or violent in presuming that he had not come by them honestly? But suppose the goods lost were merely a pair of shoes, or a coat, such as in his station of life it would be natural and proper for the prisoner to wear, and that these were not traced into his possession until after a few months from the time of the theft, the injustice of making so violent a presumption as to deem him the thief becomes obvious at once." 7 Monthly Law Mag. 58, 59.

"What shall be considered a *recent* possession, cannot be absolutely determined by any rule, but must depend not only upon the mere lapse of time, but upon the nature of the articles stolen, and the considerations whether they are of a description likely to pass rapidly from hand to hand, or such as the party might, from his situation in life, or the nature of his vocation, become innocently possessed of." Burrill Circ. Ev. 448; Best on Pres., § 305; Best on Ev., § 211; 3 Gr. Ev., § 32; 2 Bishop Cr. Proc., § 701; Ben. & H. L. C. C. 366, 1st ed.

"Light, pocket articles, or those which are portable in a small compass, especially if they be common or cheap, would of course be purchased or received with less probability of the transaction coming under the observation of others who could be witnesses, than ponderous, large, rare, curious, or expensive things." 1 Ph. Ev. 636, note (4th Am. ed.). "The force of this presumption depends upon the consideration that the prisoner who *can* account for his possession of the goods, will, if that possession be an honest one, give a satisfactory account of it." 2 Stark. Ev. 449. "Its foundation is the obvious consideration that, if the possession has been lawfully acquired, the party would be able, at least shortly after its acquisition, to give an account of the manner in which such possession was obtained." Wills Circ. Ev. 47; Reporter's note to *Cockin's Case*, 2 Lewin C. C. 235. In a criminal case, no inference of guilt can be drawn from the refusal of the defendant to testify* (Bill of Rights, art. xv; Laws 1869, ch.

---

* See *State* v. *Flanders*, 38 N. H. 330, 331, and note to *State* v. *Straw, ante* 460.                                                   REPORTER.

23, sec. 2) ; and, so far as the presumption is sustained by the proved or presumed ability of the defendant to explain his possession by evidence at the trial, it must, if he refuses to testify, rest on his proved or presumed ability to explain his possession by other evidence than his own testimony.

Even if the point were not settled by authority, we should come, by a simple process of reasoning, to the conclusion that there can be no absolute rule for drawing, from recent possession of stolen property, a presumption of guilt without reference to the nature of the property. The possession of a metallic or paper piece of money of the smallest denomination, five days after it was stolen, might have less weight, as evidence, than the possession of the library of Harvard University, or Powers' Greek Slave, or an elephant, five years after the larceny of such property. It would ordinarily be more probable that the possessor could prove (by other evidence than his own testimony) how he obtained the possession in the latter case than in the former. It is equally clear, upon authority and upon reason, that the presumption, from recent possession of stolen property, depends upon the nature of the property.

Is it the duty of the court, or the duty of the jury, to determine whether, in view of the nature of the property, the possession is recent enough to raise the presumption ? This duty has frequently been performed by the court. Courts governed by precedent can easily find precedent enough to put that duty upon them. But whenever a judge, in the discharge of that duty, undertakes to charge a jury, he practically demonstrates, and virtually admits, that there is no rule of law on the subject. He does not say to the jury, " There is a general rule of law, or a legal presumption, applicable to all kinds of property ; " but he must say, in substance, " There is a general rule of law which finds guilt from the recent possession of stolen property ; but whether the possession is recent or not depends upon the nature of the property. There is no rule of law which divides the infinite varieties of property into three hundred and sixty-five or any other number of kinds, and requires you or me to draw the presumption, from the possession of one kind one day after the theft, from the possession of another kind two days after, and so on to the end of the list ; that allotment of time and variety is left to my judgment ; and, in my judgment, the time and variety, in this case, are sufficient to raise the presumption : this presumption, found by me, is binding upon you." It is useless to call such a presumption a presumption of law. Call it what we may, it is a presumption of fact. 2 Stark. Ev. 684 ; 3 Gr. Ev., §§ 31, 32 ; Burrill Circ. Ev. 67, note *b*; 2 Bishop Cr. Proc., §§ 697, 701 ; 1 Wharton Cr. L., § 729; 7 Monthly Law Mag. 56, 57 ; *Engleman* v. *State*, 2 Ind. 91, 97 ; *Hall* v. *State*, 8 Ind. 439, 442 ; *Graves* v. *State*, 12 Wis. 591, 593. It is a presumption established by no legal rule, ascertained by no legal test, defined by no legal terms, measured by no legal standard, bounded by no legal limits. It has none of the characteristics of law. Whether it be found by the judge or the jury, the judge and the jury must be equally unconscious of finding in it any

semblance of a legal principle, however much good sense may appear in the result arrived at. Being a presumption of fact, it should, according to our practice, be drawn by the jury, and not by the court.

" As some articles pass from hand to hand more readily than others, the nature of the articles ought to be taken into consideration by the jury in determining whether the possession is so recent as to lead to the conclusion that the prisoner stole them." 2 Russell on Crimes 124. Suppose the judge charges the jury, " The law is, that recent possession raises the presumption ; but the recentness of the possession depends upon the kind of property ; and the allotment of length of time and variety of property is left to your judgment. The law does not declare that the possession of some kinds of property a day after the theft is recent, or that the possession of other kinds of property a year after the theft is not recent." All the law there is in such a charge would be more clearly expressed thus: " The law is, that there is no legal rule on the subject." Whether the nature of the property is such that the unexplained possession of it is recent enough to lead the jury to the conclusion that the prisoner is guilty, is a plain question, and as plainly a question of fact as can be presented ; and it covers the whole ground which the so-called legal presumption pretends to occupy. That question, if it is presented by the evidence, should be substantially submitted to the jury ; and it cannot be submitted to them without a substantial abandonment of the legal presumption.

Courts have undertaken to decide whether the defendant's possession was unexplained, or whether his explanation was satisfactory. This explanation is often understood to be, not the evidence produced by the defendant at the trial, but the account given by him of his possession at the time when the property is found in his possession, or when he is accused or arrested. "When stolen property is found upon one, or in his possession, attention shall be given to his own explanation then made of how he came by it; and this explanation may be produced in evidence to the jury in his behalf, as well as against him. If the explanation is reasonable, and it is not shown by the prosecutor to be false, its weight in the scale for him will be very considerable ; but, if it appears unreasonable, and especially if it is shown to be false, it will bear against him very heavily. Such an explanation, especially if given instantly upon the property being discovered, and the accusation brought home to the prisoner's knowledge, is deemed a part of the *res gestæ.*" 2 Bishop Cr. Proc., § 702.

*Reg.* v. *Crowhurst,* 1 C. and K. 370, was an indictment for stealing a piece of wood, the property of one Harman. " On the piece of wood being found by a police constable in the prisoner's shop, about five days after it was lost, he stated that he bought it from a person named Nash, who lived about two miles off. Nash was not produced as a witness for the prosecution, and the prisoner did not call any witness.

ALDERSON, B. (in summing up) : " In cases of this nature, you should take it as a general principle that where a man in whose possession stolen property is found gives a reasonable account of how he came by it, as by telling the name of the person from whom he received

.it, and who is known to be a real person, it is incumbent on the prose-
cutor to show that that account is false ; but, if the account given by
the prisoner be unreasonable or improbable on the face of it, the onus
of proving its truth lies on him.    Suppose, for instance, a person were
·to charge me with stealing this watch, and I were to say I bought
it from a particular tradesman whom I name, that is,·*prima facie*, a
reasonable account, and I ought not to be convicted of felony unless it
is shown that that account is a false one."

In *Reg.* v. *Evans*, when the beetle-head was found in the defendant's
possession fifteen months after Williams claimed he lost it, the de-
fendant " claimed it as his own property, and stated that he had
bought it eight years ago, at a sale of his mother's effects."    ALDER-
SON, B., after ruling that the possession of property of such insignifi-
cant value fifteen months after it was alleged to have been stolen was
not recent enough to raise a presumption against the defendant, in-
structed the jury as follows: " If the prisoner had said, in the first
instance, ' Why, really, I can't tell where or how I got this beetle,'
I should have said that that was a reasonable statement, and that
he ought not to have been indicted for stealing it ; in that case it be-
·ing assumed that the prisoner does not deny that the article found
might once have been the property of the prosecutor.    Where, how-
ever, the prisoner is shown to·have claimed the thing so found in his
possession, and sworn to by the prosecutor, to be his own property by
right of a purchase made eight years ago and a continued possession
up to the present time, I should say that that was not so reasonable
an account of his possession as to exempt him from the necessity of
accounting for it to the satisfaction of a jury ; for if it be true, the
prosecutor is wrong, and the identity of the thing found with that lost
is disputed.    If the prosecutor should satisfy the jury that the beetle
in question was his, then the statement of the prisoner accounting for
his possession of it must be false, and he must be presumed to have
.stolen it, though it was not found in his possession for fifteen months   .
after the loss."

When courts thus undertake to decide what is a satisfactory explan-
ation or reasonable account of the defendant's possession, they mani-
festly express an opinion on the facts and the weight of the evidence,
and not on any question of law.    When Baron ALDERSON told the
jury, in *Reg.* .v. *Evans*, that if the statement of the prisoner account-
ing for his possession of the beetle was false, he must be presumed
to have stolen it, the presumption intended was one of fact and not of
law.    These are mere instances and illustrations of the general prac-
tice of the judge giving to the jury his opinion on the facts ; and this
general practice, probably, is the chief origin of the supposed legal pre-
sumption drawn from the possession of stolen property.

When judges, following the common practice of giving the jury their
opinions of the facts and the weight of the evidence, had charged juries
year after year, for a great length of time, that possession of stolen
property was presumptive evidence of guilt, or raised a presumption of
guilt, this form of judicial instruction finally came to be considered as

the law of the land.   Whether it was matter of fact or matter of law was practically immaterial, the influence of the court upon the jury being then generally overwhelming in cases that touched no political prejudice or sympathy.   Being constantly repeated by the court, it naturally acquired the position and strength of an established dogma.   The uniform practice of the judge, giving the jury his opinion on any matter of fact on which he saw fit to aid them in that way, was unquestioned. *McLanahan* v. *U. I. Co.*, 1 Pet. 182; *Games* v. *Stiles*, 14 Pet. 322, 327; *Mitchell* v. *Harmony*, 13 How. 131, 142, 148; *State* v. *Bennet*, 3 Brev. 514, S. C. 2 Const. Rep. 692; *State* v. *Kinman*, 7 Rich. 497, 501, 503, 504; *Bell* v. *Reed*, 4 Binn. 136, 137; *Pierce* v. *State*, 13 N. H. 559; *King* v. *The Dean of St. Asaph*, 21 St. Tr. 900, 923; Cooley Const. Lim. 320; Sedgwick St. & Const. Law 615; and authorities cited in *State* v. *Pike*, 49 N. H. 417, 436.   " The practice of advising the jury as to the nature, bearing, tendency, and weight of the evidence, although it be a duty which from its very nature must be, in a great measure, discretionary on the part of the judge, is one which does not yield in importance to the more definite and ordinary one of directing them in matters of law."   1 Stark. Ev. 472.

In *King* v. *Diggles*, Wills Circ. Ev. 53, an indictment for the murder of an aged man named Cass, and his wife, it appears that after the homicide, the defendant sold a waistcoat proved to have belonged to Cass, in the pocket of which the purchaser found a pair of spectacles, which were also proved to have belonged to Cass.   Concerning the spectacles, Mr. Justice BAYLEY instructed the jury that " it was not very likely that the old man would have sold them."   If, upon the strength of this precedent, the authorities had recognized the presumption that an old man would not sell his spectacles, it would have been as much a presumption of law as many other inferences of fact, which have crept into the law through the English judicial practice of advising the jury as to the weight of the evidence.

It was not the practice to inform the jury that they were bound by the opinion of the judge in matters of law but not in matters of fact. The line between law and fact was not drawn as it is now being drawn in this State.   The attention of the bar, court, and jury was seldom called to the distinction.   The attempt of the English judges, in the latter part of the last century, to establish the distinction in political prosecutions for libel was an exception to the general rule, and an unfortunate exception, for the court then claimed the presumption of unlawful intent to be a matter of law in cases in which it was a matter of fact, and juries were thereby invited to render verdicts in open defiance of the express directions of the court; and the distinction between law and fact was confounded worse than ever.   *Pierce* v. *State*, 13 N. H. 562; *Com.* v. *Anthes*, 5 Gray 213, 214, 215, 218, 299, 300; *State* v. *Croteau*, 23 Vt. 36, 51, 57, 58; May Const. Hist. Eng., ch. ix; 2 Kent Com. 17, 20, 25.

The confusion may have been increased by the influence of the practice in chancery, ecclesiastical (including probate and divorce), admiralty, military, naval, and magistrates' courts without a jury, where it

was not necessary to distinguish between a question of law and a question of fact, because both were decided by the same tribunal. A similar influence may have come from the exceedingly frequent exercise of the power of setting aside verdicts as against the weight of the evidence, and from the presumptions found and declared by the court on occasions of that kind.

The rules of the civil law, adapted to a court without a jury, have had a marked effect in the introduction into the common law of presumptions of fact found by the judge, and used by him to change the burden of proof in derogation of the trial by jury. Co. Litt. 6 *b;* 1 Phillipps Ev. 612, *note,* 613, *note* (4th Am. ed); 1 Gr. Ev., § 33; Burrill Circ. Ev. 66; 18 Monthly Law Reporter 485; *Rex* v. *Almon,* 5 Burr. 2686. "Presumptions of fact are properly divisible into slight and strong. * * * By a strong presumption, is meant one which acts on the mind of the judge with sufficient force to induce him to believe in the existence of a particular state of things, without, however, destroying the impression that it might be otherwise. Its effect, therefore, is to transfer the burden of proof to the opposite party, when, if he fail in establishing the contrary, it may be taken for truth." Huberus Prael. Jur. Civ., lib. 22, tit. 3, N. N. 15, 16.

"The resemblance between inconclusive presumptions of law and strong presumptions of fact, cannot have escaped notice—the effect of each being to assume something as true until rebutted; and, indeed, in the Roman law, and other systems where the decision of both law and fact is intrusted to a single judge, the distinction between them becomes in practice almost imperceptible; but it must never be lost sight of in the common law, where the functions of judge and jury should always be kept distinct. Unfortunately, however, the line of demarcation between the different species of presumptions has not always been observed with the requisite precision. We find the same presumption spoken of by judges, sometimes as a presumption of law, sometimes as a presumption of fact, sometimes as a presumption which juries should be advised to make; sometimes as one which it was obligatory on them to make," &c. Best on Ev., § 323; Best on Pres., § 37.

Under various influences adverse to a critical and rigid maintenance of the distinction between law and fact, not only was it the practice for the judge to give the jury his opinion on the facts, but it was recognized by all the authorities as a correct practice. When, for many ages, the court had constantly said to the jury, "There is such and such a presumption," without making any reference to, or thinking of, its character as a presumption of law or a presumption of fact, how could its true character be understood and preserved? It would have been wonderful if such a uniform and approved practice had not, in the course of time, practically buried or obliterated the dividing line between law and fact, at very many points, and particularly through the region of presumptions, and produced great difficulties for those who should endeavor to make partition of what had so long been held in common and undivided, thoroughly commingled and blended together. We are not left to conjecture whether such a practice would be

likely to produce such a result. We know it has produced it. We are now contending with those difficulties. The law is burdened and obscured by a great mass of common opinion, general understanding, practice, precedent, and authority (including the presumption from possession of stolen property), that has passed for law, but is in truth not law, but fact, coming down to us largely by descent from the ancient custom of the judge giving the jury his opinion of the evidence. To clear the law of this encumbrance, revive elementary principles strictly legal in their nature, separate the province of the court from the province of the jury, and maintain the latter in its entirety, is a duty put upon us by the constitution as interpreted in *Pierce* v. *State*, 13 N. H. 536, 543, 551, 554.

It was there held, on constitutional grounds, that the jury are not the judges of the law in criminal cases. The court said : " It is as little our duty, it is as inconsistent with our oaths, to throw upon the jury the responsibility of determining the law if it do not properly belong to them, as it is to assume to ourselves a jurisdiction which the law has not given us. We intend to do neither the one nor the other, but to state the law as we find it, upon a deliberate examination of the authorities and the constitution." And upon a deliberate examination of the authorities and the constitution, they said : " It is the opinion of the court, that it is inconsistent with the spirit of the constitution that questions of law, and still less questions of constitutional law, should be decided by the verdict of the jury, contrary to the instructions of the court." The same conclusion was reached in *Com.* v *Anthes*, 5 Gray 185, where it was held that the legislature cannot, consistently with the constitution, authorize the jury to determine questions of law involved in the issue, against the instructions of the court. We must take it as a settled principle of constitutional law, that the court are the judges of the law, and the jury judges of the facts involved in the issue. *Erving* v. *Cradock*, Quincy Mass. Rep. 553, *note* 560–572 ; *State* v. *Croteau*, 2 Ben. and H. L. C. C. 388, *note* (1st ed.) ; 1 *id.* 363, *note* (2d ed.). The trial by jury established by the constitution is a trial in which the duties of the court and jury are divided in that manner. That was the true meaning of trial by jury at common law (as was held in *Pierce* v. *State*), and that was the meaning in which the constitution adopted and guaranteed it. *U. S.* v. *Morris*, 1 Curtis C. C. 23 (p. 55). This point is so well settled and so well understood, that no one would suppose it in the power of the legislature to transfer the duty of finding the facts, from the jury to the judge, in any case in which a party has a constitutional right to a trial by jury, and insists upon his right. And if the judge cannot constitutionally take that duty upon himself when expressly directed so to do by a statute, he cannot constitutionally take it upon himself in the absence of such a statute. When, therefore, we have come to the conclusion that the presumption from possession of stolen goods is a presumption of fact, we find ourselves prohibited by the constitution from delivering to the jury the presumption as a result binding upon them, or a rule by which they are to be governed.

We have neither any right nor any inclination to be astute in inventing devious methods of infringing the trial by jury, intended to be established by the constitution. We are to take that trial, not in any narrow and literal sense, but in the broad and liberal sense set forth in *Pierce* v. *State*, and give it full force and effect, so that it shall be in reality a trial in which the jury, and not the court, shall be the judges of the facts involved in the issue. Article xc, of the constitution, adopted the body of the common law, such parts thereof only excepted as are repugnant to the constitution. We are not to employ that article against the full operation of the jury trial, by holding a plain matter of fact to be matter of law, on the ground that courts treated it as if it were a matter of law before the adoption of the constitution. On the subject of evidence, and presumptions drawn from evidence, no such course can be taken, because, in the practice of the judge giving the jury his opinion of the evidence, the distinction between a presumption of law and a presumption of fact was lost. And even if the distinction had not been lost, the decision in *Pierce* v. *State* is conclusive. In that case, on the question whether the jury are the judges of the law in criminal cases, the common law, as universally understood and practised in New Hampshire from the first jury trial ever held in the State down to 1842 (excepting the change of Judge PARKER's opinion, stated by him in *Pierce* v. *State*, 13 N. H. 561), was held to be illegal and unconstitutional, and the new doctrine was announced that the jury are not the judges of the law in criminal cases. That doctrine was one of the most startling legal novelties ever introduced into this State, although the only wonder now is that there could ever have been any doubt of its soundness. And since that doctrine has been inflexibly maintained nearly thirty years, and the decision of the law by the jury contrary to the instructions of the court held, with the utmost strictness, to be an unconstitutional invasion of the province of the court, the court are not in a situation to display any ingenuity in invading the province of the jury, and infringing their constitutional right and duty to decide the facts, and the constitutional right of parties to have the facts decided by the jury. If any special influence were needed to make a court vigilant and zealous, in the highest degree, to abstain from encroaching upon the sphere of the jury, it exists here. Until 1842, juries had uniformly been instructed, in criminal cases, that they were the judges of the law. At the trial of *State* v. *Corey*, in Cheshire, October, 1830, Judge PARKER, then of counsel for the defendant, told the jury, " They were by law constituted the judges of the law as well as the fact in the case." The system inaugurated by him in 1842 was practically revolutionary, but, from that time to this, it has been held to be a fundamental theory of the constitution, an ancient principle of the common law, and the true construction of the Great Charter.

Having discarded the old practice as a test of the right and duty of the jury to decide the law, we are not at liberty to adhere to it as a test of the right and duty of the court to decide the fact. If the application of this doctrine, in its whole length and breadth, should clear the law of a great mass of fact which wrongfully encumbers it,.

the result would be not only an ideal vindication of constitutional principle, but also a practical improvement, tending to facilitate the study and administration of the law, and to make it a more intelligible and rational system of general rules—a point of no small consequence in a society which undertakes to found its institutions upon popular intelligence.

If all the rules of fact, which have been recognized as an indispensable part of the law-merchant, cannot be retained by the rule which allows general usage and matters of general knowledge to be taken notice of judicially, without proof, or by some other means (1 Gr. Ev., § 5 ; *Barnett* v. *Brandao*, 6 M. and G. 665 ; *Brandao* v. *Barnett*, 3 M. G. and S. 530 ; 1 Bl. Com. 75, *note* by Sharswood ; *Haddock* v. *Murray*, 1 N. H. 142 ; *B. M. Bank* v. *Philbrick*, 40 N. H. 509 ; *Wyman* v. *Adams*, 12 Cush. 213, 214; *Edie* v. *E. I. Co.*, 2 Burr. 1226 ; *Bryden* v. *Bryden*, 11 Johns. 188 ; 1 Parsons on Notes and Bills 268, 507), they may be provided for by statute. It is better that necessary statutes should be enacted, than that the slightest judicial inroad should be made upon constitutional rights. In *Tindal* v. *Brown*, 1 T. R. 168, Lord MANSFIELD said : " It is extremely clear that the holder of a bill, when dishonored by the acceptor, must give reasonable notice to the drawer or indorser. What is reasonable notice is partly a question of fact and partly a question of law. It may depend in some measure on facts,—such as the distance at which the parties live from each other, the course of the post, &c. But wherever a rule can be laid down with respect to this reasonableness, that should be decided by the court, and adhered to by every one for the sake of certainty." In the same case, ASHURST, J., said : " It is of dangerous consequence to lay it down as a general rule, that the jury should judge of the reasonableness of time. It ought to be settled as a question of law. If the jury were to determine this question in all cases, it would be productive of endless uncertainty." But this argument of expediency and convenience for turning fact into law must be sparingly used in a jurisdiction in which the subject has been placed upon the high ground of a constitutional duty which renders a careful discrimination between law and fact a vital part of trial by jury, and in which, by so revolutionary a decision as that of *Pierce* v. *State*, an unconstitutional invasion of the province of the court has been so vigorously repelled. In usurpations, the jury do not meet the court upon equal terms, and the court must be equally sensitive, whether it is their own province, or the province of the jury, that is encroached upon. Convenience is a proper consideration for the legislature on any subject within their sphere, and for the court in ascertaining the meaning of a statute or constitution ; but the court cannot consider the convenience of violating a constitutional principle.

To whatever extent matter of fact involved in the issue is held to be matter of law, to that extent the constitutional system of trial by jury is destroyed ; and when part is destroyed, the remainder is put in jeopardy. One precedent is held to justify another. Every matter of fact turned into law, opens the way for a further annexation of the

province of the jury to the province of the court, and a gradual absorption.

None the less dangerous is the process because it has been going on a long time, or because the authority of jurists, whose attention has not been called to its constitutional aspect, may be cited in support of an invasion of which they were not conscious, or because of the deference for English practice in which the sphere of the jury has been reduced to such narrow limits that, at times, it was only by the jury resisting the court that English liberty was saved.

The English doctrine of presuming malice or criminal intent as a matter of law in certain cases may have grown out of the judicial practice of advising the jury on the weight of the evidence—a practice continued so long that the true character of the presumption as an inference of fact passed into oblivion. *Lisbon* v. *Lyman*, 49 N. H. 576. When Bishop Fisher was tried on the charge of high treason for maliciously saying that the king was not supreme head in the earth of the church of England, he claimed that the words were not spoken maliciously, but in the way of advice and counsel when it was requested of him by the king himself. " To which it was answered by some of the judges, that the word *maliciously* is but a superfluous and void word ; for if a man speak against the king's supremacy by any manner of meanes, that speaking is to be understood, and taken in law, as maliciously." 1 St. Tr. 401.

"All the judges were of opinion, that, upon consideration of the facts found, it appeared there had been sufficient time for Mr. Oneby's transport of passion to cool, and that he had deliberated, and that the killing of Mr. Gower was a deliberate act, and the result of malice Mr. Oneby had conceived against the deceased. But before I mention their reasons, I must lay down this proposition which they all agreed : viz., that the court are judges of the malice, and not the jury ; and that the court are also judges upon the facts found by the jury, whether, if the quarrel was sudden, there was time for the passion to cool, or whether the act was deliberate or not." *Rex* v. *Oneby*, 2 Ld. Raym. 1493.

" In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him ; for the law presumeth the fact to have been founded in malice, until the contrary appeareth." Foster Cr. L. 255. In *King* v. *Woodfall*, 20 St. Tr. 901, Lord MANSFIELD is reported to have instructed the jury, " That as for the intention, the malice, sedition, or any other still harder words which might be given in informations for libels, whether public or private, they were mere formal words ; mere words of course ; mere inference of law with which the jury were not to concern themselves ; that they were words which signify nothing ; just as when it is said in bills of indictment for murder, ' instigated by the devil,' " &c.

" The province of the jury is sometimes invaded by instructions requiring them to adopt, as absolute conclusions of law, those deductions which they are at liberty to draw from a particular state of facts

if they regard them as reasonable : such as that a homicide must be presumed malicious, unless the defendant proves the contrary,—which is a rule contradictory of the results of common observation; or that evidence of a previous good character in the defendant ought to be disregarded, unless the other proof presents a doubtful case,—which would deprive an accused party of his chief protection in many cases of false accusations and conspiracies. Upon the presumption of malice in homicide, the reader is referred to the review of the trial of Prof. Webster, by Hon. Joel Parker, in the North American Review, No. 72, p. 178." Cooley Const. Lim. 326, *note.*

An immense mass of authorities (Burrill Circ. Ev. 48, 49 ; 1 Ben. and Heard L. C. C. 347–360 ; 2 *id.* 504–538 ; 1 *id.* 295–362, 2d ed.) was overthrown·by the decision in *State* v. *Bartlett,* 43 N. H. 232, 233, 234, where the presumption of malice in homicide was held to be a presumption of fact, and a long step was taken towards the rectification of the doctrine of presumptions, and its establishment upon ground consistent with the constitutional trial by jury. In *Pitkin* v. *Noyes,* 48 N. H. 294, it was held that the question whether the labor and skill of a workman are understood by the parties to be of the essence of a parol contract so as to take it out of the operation of the statute of frauds in relation to the sale of goods, was a question of fact for the jury. These and other similar cases indicate the general drift. We are consciously moving, against a great currént of authority, towards a trial by jury in which the jury shall be the judges of the fact as fully and completely as the court are the judges of the law. The decision in *State* v. *Bartlett* struck out of our books a vast number of ancient and modern authorities, and submitted to the jury, as a question of fact, a subject which had long been studied as a question of law. If, by virtue of that precedent, the law should be still more simplified, and sound constitutional principle still further advanced, the profession would be relieved and justice promoted.

Whether the defendant, in this case, had any possession of the watch and chain, at any time, either when they were found or before ; whether his possession, if any he had, was recent enough, or exclusive enough, or unexplained enough, to raise a presumption of guilt,—were questions of fact for the jury. There was *some* evidence to be submitted to the jury on those questions. If the jury found the defendant had the property in his possession after it was stolen, that fact was evidence against him. If they found an absence of explanatory evidence on his side, under circumstances which tended to show he could furnish such evidence, that fact was additional evidence against him. *Rex* v. *Burdett,* 4 B. and Ald. 161, 162 ; 1 Phillipps Ev. 598, 599, 4th Am. ed. ; J. F. Stephen Cr. L. 303. But if those facts were found, there was no presumption of law, nor was the burden of proof shifted. The State, in the indictment, made an affirmation of the defendant's guilt which the defendant traversed in his plea. The State had the affirmative, and the burden of proof which belongs to the affirmative. The question, from the beginning to the end of the trial, was, whether the affirmative allegation of guilt was proved by the testimony introduced on both sides, and by

the evidence which consists of the non-production of testimony, *not* including the refusal of the defendant to testify if there was such a refusal.*    The court rightly refused to instruct the jury as requested.

*Judgment on the verdict.*

---

*See note *ante*, p. 516.                                    REPORTER.